UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSE TORRES, | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 2:17-cv-393 |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
|         Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Jose Torres, on October 12, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Jose Torres, filed applications for Disability Insurance Benefits and Supplemental Security Income on March 10, 2016 and March 17, 2016, respectively, alleging a disability onset date of June 1, 2015. (Tr. 16). The Disability Determination Bureau denied Torres' applications initially on May 13, 2016, and again upon reconsideration on August 23, 2016. (Tr. 16). Torres subsequently filed a timely request for a hearing on September 13, 2016. (Tr. 16). A video hearing was held on February 21, 2017, before Administrative Law Judge (ALJ) William E. Sampson, and the ALJ issued an unfavorable decision on March 14, 2017. (Tr. 16-31). Vocational Expert (VE) Carrie E. Anderson appeared by telephone at the hearing. (Tr. 16). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Torres met the insured status requirements of the Social Security Act through September 30, 2018. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Torres had not engaged in substantial gainful activity since June 1, 2015, the alleged onset date. (Tr. 18).

At step two, the ALJ determined that Torres had the following severe impairments: bilateral sensorineural hearing loss (SNHL) with tinnitus and hearing aid use; hypertension (HTN) status post small vessel ischemic changes and an acute/sub-acute left thalamic infarct; and bipolar disorder. (Tr. 18). The ALJ found that Torres' severe impairments, considered singly and in combination, imposed more than a minimal limitation on his physical and mental ability to engage in basic work activities. (Tr. 18). The ALJ found that Torres' fecal incontinence and/or irritable bowel syndrome were not medically determinable impairments. (Tr. 19).

At step three, the ALJ concluded that Torres did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ indicated that, as for Torres' bilateral sensorineural hearing loss, he retained the ability to carry on a conversation at normal levels. (Tr. 20). Also, as for his hypertension, the ALJ indicated that it was not of such severity as to meet or medically equal listing 4.00. Finally, the ALJ determined that Torres' mental impairments did not meet or medically equal listings 12.04 and 12.06. (Tr. 20).

The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

2

(Tr. 20). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 20-21).

The ALJ determined that Torres had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing himself. (Tr. 21). Because Torres' mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 21). Additionally, the ALJ determined that Torres did not satisfy the paragraph C criteria. (Tr. 21).

After consideration of the entire record, the ALJ then assessed Torres' residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl. The claimant can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to noise. The claimant is further limited to simple, routine, and repetitive tasks. The claimant can tolerate brief and superficial interaction with co-workers and supervisors, but the work cannot require interaction with the general public.

(Tr. 22). The ALJ explained that in considering Torres' symptoms he followed a two-step process. (Tr. 22). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Torres' pain or other symptoms. (Tr. 22). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Torres' functioning. (Tr. 22).

3

The ALJ found that Torres' medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 23). However, the ALJ determined that Torres' statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). The ALJ indicated that he considered that Torres pursued employment in assessing the weight afforded to Torres' subjective claims of ongoing symptom persistence and intensity. (Tr. 23). Moreover, the ALJ found that the persuasiveness of Torres' allegations was compromised by inconsistencies in the evidentiary records and the actual objective clinical findings of the VA clinicians and the discharging clinicians at St. Catherine's Hospital. (Tr. 28).

At step four, the ALJ concluded that Torres was unable to perform any past relevant work. (Tr. 29). Considering Torres' age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that he could perform, including clerk (106,000 jobs nationally), sorter (101,000 jobs nationally), and packer (101,000 jobs nationally). (Tr. 30-31). The ALJ found that Torres had not been under a disability, as defined in the Social Security Act, from June 1, 2015 through the date of this decision, March 14, 2017. (Tr. 31).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have

4

defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the

impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Torres has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In his appeal, Torres has argued that: (1) the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence; and (2) the ALJ's evaluation of his subjective symptoms was legally insufficient and not supported by substantial evidence.

Torres has argued that the ALJ's RFC assessment was not supported by substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or

restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not

7

support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ limited Torres to simple, routine, and repetitive tasks with brief and superficial interaction with co-workers and supervisors, but no interaction with the general public. (Tr. 22). Torres contends that it is not clear how the ALJ determined the RFC or what evidence he relied on in assessing the RFC. The Commissioner has argued that the ALJ's findings were supported by the opinions of examining psychologists, Drs. Gopal and Singh, and State agency psychologists, Drs. Lovko and Kennedy.

The Commissioner indicated that Drs. Lovko and Kennedy opined that Torres could do "unskilled tasks in a setting not requiring significant interaction," "relate on a superficial basis on an ongoing basis with co-workers and supervisors," and "manage the stresses involved with work." (Tr. 73). However, the ALJ did not provide any discussion of these opinions in his decision. The ALJ simply stated that, "[t]he assessed residual functional capacity is supported by the objective findings, the State agency consultants' opinions, and other factors discussed above." (Tr. 29). Without an explanation or a discussion of the opinions, the court is unable to ascertain what evidence supported the ALJ's RFC determination. Thus, the ALJ has failed to build a logical bridge from the evidence to his RFC finding.

Moreover, the ALJ did not evaluate the medical opinions pursuant to 20 C.F.R. § 404.1527. Although the ALJ functionally adopted the opinions of Drs. Lovko and Kennedy in forming Torres' mental RFC, the ALJ did not indicate that in his decision. The ALJ failed to expressly evaluate their opinions, consider the checklist factors, and assign weight to the

opinions. ALJs must evaluate all medical opinions. **20 C.F.R. § 404.1527(c)** ("Regardless of its source, we will evaluate every medical opinion we receive.").

The ALJ found at step three that Torres had moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 20). Torres reported that he had limitations in concentration, focusing, following instructions, completing tasks, avoiding distractions, and maintaining a regular work schedule. (Tr. 20). However, the ALJ noted that Torres could drive, prepare meals, watch television, handle his medical care, and care for his autistic son. (Tr. 21). The ALJ indicated because of the moderate limitations assessed appropriate limitations to unskilled work were included in the RFC. (Tr. 21). Yet, the ALJ did not point to any evidence that limiting him to simple, routine, and repetitive tasks would adequately capture his limitations in concentration, persistence, or pace. Rather, the ALJ provided a summary of the medical evidence.

The ALJ has addressed only the difficulty of the tasks themselves, rather than the ability of Torres to perform them with the consistency, persistence, and pace demanded in a work environment. *See* **Eckhart v. Berryhill,** 2018 WL 4178695, at *4 (N.D. Ind. 2018). "The ability to stick with a given task over a sustained period" is simply "not the same as the ability to learn how to do tasks of a given complexity." ***O'Connor-Spinner v. Astrue***, 627 F.3d 614, 620 (7th Cir. 2010)). The ALJ did not tie the limitation to simple, routine, and repetitive tasks to evidence in the record or to a medical opinion. Therefore, the ALJ did not provide enough analysis for the court to provide meaningful review of the appropriateness of the ALJ's RFC assessment.

Next, Torres has argued that the ALJ's evaluation of his subjective symptoms was legally insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue,** 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must

9

explain his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ discounted Torres' statements concerning the intensity, persistence, and limiting effects of his symptoms because they were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). Torres has argued that "not entirely consistent" is not the legal standard; rather, the ALJ must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. (citing **20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a)**). However, under SSR 16-3p, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029, at *8; *see also* **20 C.F.R. §§ 404.1529(a), 416.929(a).** Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See **Robert v. Berryhill**,* 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see also **Parker v. Astrue**,* 597 F.3d 920 (7th Cir. 2010).

The ALJ summarized the medical evidence citing inconsistencies in Torres' allegations and the objective medical evidence. Specifically, the ALJ indicated that the medical findings were not consistent with the claims of daily cognitive limitations, suicidal/homicidal ideations, or severe social deficits. (Tr. 24). Thus, the ALJ concluded that Torres' allegations of symptoms were not consistent with the objective medical evidence.

The ALJ acknowledged some specific inconsistencies in the record. Torres alleged that his impairments precipitated his exit from work. However, he repeatedly had reported that he stopped working after being laid off. At the hearing, Torres testified that he was fired from his most recent employment because he was working on an assembly line and every time he had to use the restroom the line would stop. (Tr. 41-42). However, the ALJ in his decision did not indicate that he considered that testimony. The ALJ also noted that Torres continued to seek employment when assessing the weight afforded to his subjective claims of ongoing symptom

11

persistence and intensity. The Commissioner contends that Torres' belief that he could work was inconsistent with his apparent belief that he was disabled.

However, a claimant's desire to work is not inconsistent with his inability to work because of a disability. *See* ***Voigt v. Colvin***, 781 F.3d 871, 876 (7th Cir. 2015) (claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment"); ***Jones v. Shalala,*** 21 F.3d 191, 192 (7th Cir. 1994) (explaining that claimant might be earning a decent wage despite being permanently disabled). The ALJ chose to acknowledge that Torres had reported that he had financial issues. Yet, he discounted Torres' symptoms because he continued to seek employment. Thus, the ALJ failed to consider Torres' financial issues as a reason for seeking employment.

The ALJ rejected Torres' claim of disabling fecal incontinence because it was not substantiated, and it lacked treatment or a valid diagnosis. Torres asserts that he sought treatment and that he was diagnosed with fecal urgency and incontinence. However, as indicated by the Commissioner, no medical explanation was provided. The ALJ indicated that Torres' treatment was not interrupted by his incontinent or urgency issues. Also, the ALJ noted that Torres went to the movies and the American Legion regularly and that there were no reports in inpatient treatment programs where he exhibited abnormal behavior equating to bowl dysfunction. Torres contends that the ALJ relied on speculation.

In determining that Torres' fecal incontinence was not a medically determinable impairment the ALJ concluded that inconsistencies detracted from the persuasiveness of the alleged symptom persistence and intensity. (Tr. 19). Specifically, the ALJ compared Torres' alleged frequency when he required restroom access with the absence of any clinician ever

12

noting incontinent/fecal issues while being examined or while in an inpatient care. (Tr. 19). The ALJ found it illogical that Torres' bowel movements occurred every 15 minutes as testified to, and that no clinical professional recorded such behavior. (Tr. 19). However, Torres testified that he went to the restroom approximately 6 times a day, for about 15 minutes, not every 15 minutes which would interrupt his appointments. (Tr. 42, 44). Thus, the ALJ misinterpreted Torres' testimony.

Even though the ALJ rejected Torres' claim of disabling fecal incontinence, the ALJ asked the VE about whether an individual who required 4 additional bathroom breaks, lasting about 15 minutes each, in addition to regular breaks would preclude employment. (Tr. 60-61). The VE indicated that individual would be precluded from work. Yet, the ALJ did not explain why he questioned the VE about bathroom breaks if he did not credit Torres' subjective complaints. Accordingly, the ALJ failed to provide any analysis about such consideration. *See* **Kukec v. Berryhill,** 2017 WL 5191872, at *4 (N.D. Ill. 2017) ("the Court endeavored to follow the ALJ's analysis, but the entire off-task bridge and conclusion have disappeared after the ALJ's hypothetical to the VE.").

Torres has presented numerous arguments relating to the sufficiency of the ALJ's subjective symptom evaluation. However, many of the arguments amount to the court reweighing the evidence, which it declines to do. The court is not finding that the ALJ's subjective symptom evaluation was patently wrong. However, since this matter is being remanded because the RFC assessment was not supported by substantial evidence, the ALJ may reconsider Torres' subjective symptoms.

Torres has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have

been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011).  The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits.  ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005).  The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 28th day of May, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge